# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

MORIA ROGERS,                                      CASE NO. 1:10-cv-00589-SMS

                              Plaintiff,           ORDER DENYING PLAINTIFF'S MOTION
                                                   FOR SUMMARY JUDGMENT
            v.

LESLIE C. SEIBERT, et al.,
                                                   (Doc. 48)
                              Defendants.
_____/

        Plaintiff Moria Rogers moves for summary judgment or summary adjudication of twelve

different issues.  Having reviewed the motion, the supporting and opposing arguments, the

evidence submitted, and applicable law, the Court denies the motion.

I.      **Undisputed Facts**

        At all relevant times, the record owner of Sierra Hide-Away Mobile Home Park was

Defendant Seibert Family Trust 1995.  Defendant Leslie Seibert and his former wife, Marilyn J.

Seibert are the trustees.[1]  In an unspecified prior action, Defendant Sierra Hide-Away Mobile

Home Park was named as the plaintiff.

        Sierra Hide-Away Mobile Home Park did not develop procedures for routinely

determining the occupancy of each unit, including identifying whether at least one occupant was

more than fifty-five years old, within 180 days of the implementation of 20 C.F.R. § 100.307.  As

---

[1]  Marilyn Seibert did not take an active role in the park's management.  Accordingly, all references to
"Defendant" (singular) shall refer to Defendant Leslie Seibert.

of April 6, 2010, defendant Leslie Seibert testified in his deposition that defendants did not have a policy about renting only to tenants who were age 55 or older.  Defendants knowingly approved several applicants for tenancy at Sierra Hide-Away Mobile Home Park who were less than fifty-five years old.

The application to rent that Plaintiff signed did not limit residency at Sierra Hide-Away to tenants who were fifty-five years old or older.  None of the 27 rules enumerated in Plaintiff's rental agreement and the general rules limited residency at Sierra Hide-Away to tenants who were fifty-five years old or older.

On April 18, 2006, Defendants' lawyer, Steven Mortimer, sent Plaintiff's attorney, Kimberly Mayhew, a letter stating "My client is ready, willing, and able to cooperate in the sale of the mobile home.  However, since the park is a senior citizen park, any purchaser will have to be 55 years old and must have reasonable credit."

On December 20, 2007, Defendant Leslie Seibert wrote to Plaintiff: "Also because you are under the age of 55 years and because this is an adult park 55 years and older and because I have waived your age requirement any live in companion will have to be 55 years or older your mother fits into that just fine."  On January 5, 2008, Defendant wrote to Plaintiff: "As you are fully aware this is an adult park age 55 years and older, no children.  You are the only exception to that rule at this time."

On April 20, 2008, Defendant Leslie Seibert sent a letter to tenants in which he stated: "As each of you know Sierra Hide-Away Mobile Home Park and Adult Park age 55 years and older with the pr[o]vision no children is governed by California Civil Code Provisions Mobilehome Residency  Law and you were provided with a current copy of these laws before you moved in and each year by February 1ˢᵗ I provide you a current new copy of the changes that are put out by Housing Community Development."

In April 2009 Defendant sent all tenants a letter stating, "A non-senior in this park may not share the home with a non-senior under section 798.34 & section 798.76."  On May 27, 2009, Defendant wrote to Plaintiff, "I have reviewed what you referred to as hazards.  I do not see the
///

2

hazards you mention especially in an Adult Only age 55 years and older Mobile Home Park with no children."

In a letter to tenants dated July 18, 2009, Defendant stated, "This is an adult park age 55 years and older, no children and this is why a number of you selected this park."  On July 31, 2009, Defendant wrote to tenant Marlaine Neal, "At your convenience please supply me with confirmation of your date of birth.  This is necessary because we are a senior citizen park, or adult park, which ever people wish to call us."

On August 20, 2009, defendants sent a letter to all tenants at Sierra Hide-Away informing them that Defendants had installed a sign declaring "Adult Park, 55 Plus, No Children."  Defendant wrote, "We have always presented to all applicants our status as age 55 years and older Senior Citizen Park which also means no children."

On September 18, 2009, Defendant Leslie Seibert sent a letter to Moria Rogers stating

> You moved your child into this park on August 29, 2009.  Raising your child here is a violation of all the following 798.34 & 798.76 & you[r] signed Application to Rent and the parks status as a Senior Citizen Park and your child is clearly not age 55 years or older.  This letter is your formal notice of violation.  You have seven days to correct your violations.  If these have not been corrected legal action will be initiated to protect the rights of all tenants, and the park ownership, and the park rules and the parks Senior Citizen status.

On September 25, 2009, Plaintiff sent Defendants a letter requesting that her newborn daughter be permitted to reside with her at Sierra Hide-Away Mobile Home Park.

On October 5, 2009, Defendant wrote to tenants, "This parks status is a senior citizen park.  I fully intend to defend and preserve that status and the laws governing that status."

On October 9, 2009, Defendant Leslie Seibert sent a letter to Plaintiff in which he stated, "On October 6, 2009 you came back into the park and paraded around in the park with your child.  This is a violation of our agreements Application to Rent and section 798.34 and 798.76 of the California Civil Code Provisions Mobilehome Residency Laws."

On October 21, 2009, Defendant wrote to the tenants, "As I leave the park and my duties as manager I only know of one issue that needs to be dealt with and that is the protecting and preserving of our status as a Senior Citizen Park.  I will work on that issue.  I want to make it perfectly clear that this issue is strictly a business issue.  We are a senior citizen park and either

the law will uphold our senior citizen status, or it won't."   On October 25, 2009, Defendant sent a letter in which he stated, "We are a senior citizen park which allows that we must have 80% senior citizen tenants and the rest can be non-seniors at the prerogative of the manager with the concurrence of the owner and we are not admitting any other non-seniors under that prerogative."

On October 29, 2009, Plaintiff sent a letter to Mark Seibert requesting that her newborn daughter be permitted to reside with her at Sierra Hide-Away Mobile Home Park.  On November 15, 2009, Mark Seibert responded, "Sierra Hide-Away is a senior citizen park, and all parties involved in ownership and management for the park wish it to remain as such.  This is not a personal matter, it is simply business.  So to be clear, it is the park's intent to remain a senior citizen park with no children living in the park."

On December 10, 2009, Defendant Leslie Seibert wrote to Plaintiff, "You also have known from the day you moved in that the park was a senior citizen park and that the management had made a decision long before you moved in that we would not have any children living in the park."

On December 21, 2009, Defendant wrote to tenants, "[W]e have always been a senior citizen park and that was controlled by interview when people approached wanting to know about tenancy."

On May 16, 2010, Defendant wrote to tenants, "I am aware of the rumor going around the park that we are not a senior citizen park.  If you are concerned about this rumor feel free to call me and I will be happy to discuss this rumor with you."  On June 1, 2010, Defendant wrote,"We are standing firmly on our findings and do so declare Sierra Hide-Away Mobile Home Park is [o]perating as a senior citizen park age 55 years and older and that we are in compliance with both H.C.D. and HOPA."

## II.    Summary Judgment Standards

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  F.R.Civ.P. 56(c)(2); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d

1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears the initial burden of

establishing the basis of its motion and of identifying the portions of the declarations, pleadings,

and discovery that demonstrate absence of a genuine issue of material fact.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

Cir. 2007).  A fact is material if it could affect the outcome of the suit under applicable law.  *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Thrifty Oil Co. v. Bank of*

*America Nat'l Trust & Savings Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003).  A dispute about a

material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for

the non-moving party.  *Anderson*, 477 U.S. at 248; *Long v. County of Los Angeles*, 442 F.3d

1178, 1185 (9th Cir. 2006).

When the moving party will have the burden of proof on an issue at trial, it must

demonstrate that no reasonable trier of fact could find other than for the moving party.

*Soremekun*, 509 F.3d at 984.  When the non-moving party will have the burden of proof on an

issue at trial, the movant may prevail by presenting evidence that negates an essential element of

the non-moving party's claim or merely by pointing out that no evidence supports an essential

element of the non-moving party's claim.  *See Soremekun*, 509 F.3d at 984; *Nissan Fire and*

*Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000).  If a moving party

fails to carry its burden of production, then "the non-moving party has no obligation to produce

anything, even if the non-moving party would have the ultimate burden of persuasion." *Nissan*

*Fire & Marine*, 210 F.3d at 1102-03.  If the moving party meets its initial burden, the burden

then shifts to the opposing party to establish that a genuine issue as to any material fact actually

exists.  *Id.* at 1103.  The opposing party cannot "'rest upon the mere allegations or

denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing

that there is a genuine issue for trial.'"  *Estate of Tucker v. Interscope Records*, 515 F.3d 1019,

1030 (9th Cir.) *(quoting* F.R.Civ.P. 56(e)), *cert. denied*, 129 S.Ct. 174 (2008).

The evidence of the opposing party must be believed, and all reasonable inferences that

may be drawn from the facts placed before the court must be drawn in favor of the opposing

party.  *See Anderson*, 477 U.S. at 255; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio*

1  *Corp.*, 475 U.S. 574, 587 (1986); *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065 (9th

2  Cir. 2003).  Nonetheless, inferences are not drawn out of the air, and it is the opposing party's

3  obligation to produce a factual predicate from which the inference may be drawn.  *See Sanders v.*

4  *City of Fresno*, 551 F.Supp.2d 1149, 1163 (E.D.Cal. 2008), *affirmed*, 340 Fed.Appx. 377 (9th

5  Cir. 2009); *UMG Recordings, Inc. v. Sinnott*, 300 F.Supp.2d 993, 997 (E.D.Cal. 2004).  "A

6  genuine issue of material fact does not spring into being simply because a litigant claims that one

7  exists or promises to produce admissible evidence at trial."  *del Carmen Guadelupe v. Negron*

8  *Agosto*, 299 F.3d 15, 23 (1st Cir. 2002). A court has the discretion in appropriate circumstances

9  to consider materials that are not properly brought to its attention, even though a court is not

10  required to examine the entire file for evidence establishing a genuine issue of material fact when

11  the opposing party has not set forth the evidence with adequate references.  *See Southern*

12  *California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003); *Carmen v. San*

13  *Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001).  If the nonmoving party

14  fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is

15  entitled to summary judgment.  *See Nissan Fire & Marine*, 210 F.3d at 1103.

16  **III.    Collateral Estoppel**

17      Plaintiff requests this Court to summarily adjudicate that Sierra Hide-Away Mobile Home

18  Park was not housing for older persons at any time relevant to her claims in this case.  She argues

19  that Defendants are collaterally estopped from arguing otherwise, based on the determination in

20  *Sierra Hide-Away Mobile Home Park v. Blackstock*, (Madera County Sup. Ct. 2010) (No. MCV

21  051322).  Defendants disagree, pointing out that, as stated in the decision itself, the *Blackstock*

22  decision was not dispositive on that issue.

23      **A.    Blackstock Eviction**

24      On April 1, 2010, Sierra Hide A Way Mobile Home Park (*sic*) filed an unlawful detainer

25  complaint for possession of mobile home park lot 7 against Rebecca C. Blackstock. In the

26  Statement of Decision and Order Denying Motion for Nonsuit (Plaintiff's Ex. 122), issued after

27  trial, California Superior Court Judge Ernest J. LiCalsi found the following facts:

28  ///

In 1983, Leslie Siebert and his wife, Marilyn, purchased Hide-Away Mobile Home Park. It was considered an "age 55 and over" mobile home park and was run as such by the Sieberts. On October 19, 1995, the property was conveyed by the Sieberts to Leslie Siebert and Marilyn Siebert, as trustees for the "Siebert Family Trust, 1995."

The Sieberts divorced in 1999. At that time, the two entered into a written partnership agreement called the "Sierra Hide-Away Mobile Home Park Partnership Agreement." Pursuant to said agreement, the managing partner was Leslie Siebert. The agreement further stated that "[t]he partnership's capital shall include each partner's ownership interest in that certain parcel of real property commonly known and described as 50889 Road 426, Oakhurst, California 93644. The partners own such real property equally as joint tenants."

Plaintiff has always maintained its policy that the mobile home park tenants must be, with few exceptions, at least 55 years, of age. Plaintiff has maintained a ratio of at least 80 percent of its tenants were at least 55 years of age. In August of 2009, Plaintiff performed a written survey with respect to such age requirement. There were previous surveys but they were not in written form. There was no information provided as to how these surveys were conducted. In addition, in 2005, Plaintiff began placing signs in the mobile home park which stated, "ADULT PARK, 55 PLUS, NO CHILDREN." In 2009, Plaintiff placed additional signs which stated, SIERRA HIDE-AWAY SENIOR CITIZEN MOBILE HOME PARK, age 55 years & Older, Federal Public Law for older persons 104-76." No written policies establishing the mobilehome park as a "55 and over" mobilehome park. The current application form states at the top of the application, Sierra Hide-Away Mobilehome Park, Age 55 and older, No Children." Other than that heading, nothing states that the park is limited to persons 55 and older. However, Leslie Siebert was unsure as to how long that form had been used. Although he testified that it had been in use for at least 5 years, the evidence demonstrates that it was not used in 2007. The "Park Rules," (Exhibit F) which were amended in 2007, state, "SIERRA HIDE-AWAY MOBILE HOME PARK, AGE 55 AND OLDER" on its heading but the rules themselves do not address any requirement that its tenants be at least 55 years of age. Mr. Siebert testified that he verbalized the age requirement to everyone. Leslie Siebert also testified that the park had no policy of only renting to tenants age 55 and older. He did say he was "rethinking it."

Defendant, age 50, testified that she saw an advertisement for Plaintiff's park and telephoned Mr. Siebert. At that time, 1999, she was 39 years of age. Mr. Siebert told her it was a "senior park but that meant at least 80 percent of the tenants must be at least 55 years of age or older. She purchased the mobile homes on spaces 6 and 7. She rented Space 6 from Plaintiff while her mother rented Space 7. Although she was only 39 years of age, Plaintiff allowed her and her 10 year old daughter to move into Space 6.

In March of 2007, Defendant signed the Amended Park Rules referred to above. In July of 2007, Defendant sold her mobile home for $2,000. It is unclear if the mobile home was purchased in the name of Plaintiff or in Leslie Siebert's name. The sales contract was signed by Leslie Siebert as buyer. Pursuant to that agreement, the sale and purchase of that mobile home "ends the tenancy of Becky Blackstock in Sierra Hide-Away Mobile Home Park age 55 and older."

Subsequent to selling her mobile home, Siebert allowed Defendant to live with her mother on Space 7. She never signed an application or a rental agreement

1   for Space 7.  However, prior to selling her mobile home, she did sign the amended
2   Park Rules.  According to Leslie Siebert, the law required him to allow Defendant
    to move into the mobile home on Space 7 because she was a family member and
3   caretaker for her mother.

4           On February 28, 2010, Defendant's mother died.  Although Defendant
    tendered rent for both March and April of 2010, Plaintiff refused to accept the rent
5   for either month.

6           On March 24, 2010, Defendant was served with "DEMAND FOR
    SURRENDER OF MOBILEHOME PARK SITE," which demanded that
7   Defendant surrender possession of Space 7 within five-days of service of the
    demand.  The demand was pursuant to *Code of Civil Procedure § 798.75, sub. (c)*.
8   Defendant did not surrender possession.  Plaintiff then initiated this action for
    unlawful detainer.

9   Plaintiff's Exhibit 122 at 2-4.

10          The judge concluded that Sierra Hide-Away Mobile Home Park did not qualify as a

11  lawful senior living mobile home park.  After analyzing the relevant factors set forth in 24 C.F.R.

12  § 100.306 (a), he concluded that because Sierra Hide-Away had failed to verify compliance with

13  24 C.F.R. § 100.307  by producing evidence that the facility had developed procedures to verify

14  the residents' ages within 180 days of the regulation's effective date and thereafter confirmed the

15  ages of residents every two years, the park could not qualify as housing for persons 55 years of

16  age and older.  Judge LiCalsi concluded:

17          Plaintiff did not comply with the *24 Code of Federal Regulations §*
            *100.307* until 14 years after the regulation was promulgated.  It has no written
18          documentation of any reliable survey, as required, until 2009.  For these reasons,
            the court finds that the Plaintiff was not in compliance with *Code of Civil*
19          *Procedure § 798.76*,  Therefore, it was not a qualified senior living community as
            it relates to Defendant.  **However, deciding this specific issue does not dispose**
20          **of the matter.**

21  Plaintiff's Exhibit 122 at 9 (*emphasis added*).

22          Then, without any reference to the park's alleged age restrictions, the court concluded that

23  Plaintiff's notice to quit was proper.  Blackstock, said the court, was not a tenant and did not

24  otherwise lawfully occupy the mobile home on Lot 7 after her mother's death.  Under California

25  law, the heir of an estate, such as Blackstock, has the right either (1) to sell the mobile home to a

26  third party so long as the homeowners' responsibilities and liabilities to the management have

27  been satisfied, or (2) to occupy the home him- or herself once he or she has satisfied the park

28  owner's requirements for residency in the park.  Because Blackstock had not proceeded as a

1  prospective purchaser and taken no steps to create her own tenancy in Lot 7, she was an unlawful

2  occupant of Lot 7.  Accordingly, the court granted restitution of Lot 7 to the parks' owners,

3  issued a writ of possession, and ordered payment to the park owners of damages and costs of suit.

4        **B.    Standard for Collateral Estoppel**

5        The doctrine of collateral estoppel bars relitigation of issues of fact or law that were

6  litigated in a prior proceeding.  *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988).

7  Whether the doctrine is invoked offensively or defensively, the party against whom collateral

8  estoppel is asserted has litigated and lost in an earlier action.  *Robi*, 838 F.2d at 322.  As with the

9  related doctrine of *res judicata*, collateral estoppel has two purposes: (1) protecting litigants from

10  the need to relitigate an identical issue with the same party or its privy, and (2) promoting judicial

11  economy by preventing needless litigation.  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326

12  (1979).

13        State law governs the extent and elements of collateral estoppel.  *Valley Wood*

14  *Preserving, Inc. v. Paul*, 785 F.2d 751, 753 (9th Cir. 1986).  In California, applying collateral

15  estoppel requires satisfaction of five elements: (1) the issue must be identical to that decided in

16  the prior proceeding; (2) the issue must actually have been litigated in the prior proceeding; (3)

17  the issue must have been necessarily decided in the prior proceeding; (4) the decision must have

18  been final and on the merits; and (5) preclusion must be sought against a person who was a party

19  or in privity with a party to the prior proceeding.  *Alvarez v. May Dep't Stores*, 143 Cal.App.4th

20  1223, 1233 (2006), *cert. denied*, 552 U.S. 814 (2007).  The party asserting collateral estoppel

21  bears the burden of establishing the five requirements.  *Johnson v. GlaxoSmithKline, Inc.*, 166

22  Cal.App.4th 1497, 1508 (2008).  Even when the "minimal requirements" for collateral estoppel

23  are satisfied, "the doctrine should not be applied if considerations of policy or fairness outweigh

24  the doctrine's purposes as applied in a particular case." *Bostick v. Flex Equipment Co.*, 147

25  Cal.App.4th 80, 97 (2007).  *See also City of Sacramento v. State of California*, 50 Cal.3d 51, 64

26  (1990).

27  ///

28  ///

9

### 1.   Identical Issue

The identical issue requirement addresses whether identical factual allegations were at stake in both the current and the prior proceedings.  *Bostick*, 147 Cal.App.4th at 96.  "[W]here the previous decision rests on a different factual and legal foundation that the issue sought to be adjudicated in the case at bar, collateral estoppel effect should be denied."  *Johnson*, 166 Cal.App.4th at 1513 (*citations and internal quotation marks omitted*).  "To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the 'primary rights' theory.'"  *Boeken v. Philip Morris USA, Inc.*, 48 Cal.4th 788, 797 (2010), *quoting Slater v. Blackwood*, 15 Cal.3d 791, 795 (1975).  Under the primary rights theory, the determinative factor is the harm suffered.  *Boeken*, 48 Cal.4th at 798.  "When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right."  *Id.*

Plaintiff's claims in this lawsuit are not identical to Blackstock's defense in the eviction suit.  Plaintiff claims that Defendants discriminated against her by barring the residency of her daughter while she was a tenant at Sierra Hideaway.  Blackstock defended against Defendants' action to remove her late mother's mobile home from the lot on which it was parked because Blackstock was not a lawful tenant.

### 2.   Actually Litigated Issue

"Assuming a full and fair opportunity to litigate, . . . federal courts must accord preclusive effects to state court judgments."  *Marquez v. Guttierez*, 51 F.Supp.2d 1020, 1026 (E.D.Cal. 1999).  "Being a matter of *issue* preclusion, collateral estoppel is naturally confined to issues actually litigated."  *Johnson*, 166 Cal.App.4th at 1513 (*citations and internal quotation marks omitted*).  Even though Blackstock's age was not relevant to the Superior Court's decision to evict her from Sierra Hideaway, that court discussed at length Sierra Hideaway's status as housing for persons over 55, suggesting that the question was actually litigated.

### 3.   Necessarily Decided

An issue is necessarily decided when two elements are satisfied: (1) the issue was actually decided; and (2) determining the issue was necessary to render a valid judgment on the merits of

the underlying procedure. *Beechwood Restorative Care Center v. Leeds*, 436 F.3d 147, 153 (2d Cir. 2006).  An issue cannot have been necessarily decided when its disposition was entirely unnecessary to the judgment in the prior proceeding. *Bostick*, 147 Cal.App.4th at 97.

The Superior Court candidly stated that its opinion on Sierra Hide-Away's status as housing for persons over 55 did not resolve the question of Blackstock's right to reside in her late mother's mobile home on Lot 7.  Ultimately, the Superior Court granted possession of the lot to its owners, finding that Blackstock had not established legal tenancy after her mother's death.  The Superior Court's opinion on Sierra Hide-Away's status for purpose of state and federal housing discrimination laws was not necessary to its decision to evict Blackstock.

### 4.   Final Decision on the Merits

Collateral estoppel applies only when the issue was lost as a result of a final judgment in the prior action. *In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000).  Judge LiCalsi's gratuitous opinion did not constitute a final decision on the merits.  Defendants did not lose the issue as a result of the final judgment: they prevailed in their action for summary dispossess on another basis.

### 5.   Identity of Parties

Defendants were parties in the Blackstock litigation.

This factor is tempered, however, because Plaintiff was not a party to the *Blackstock* case. "[A] particular danger of injustice arises when collateral estoppel is invoked by a nonparty to the prior litigation.  Such cases require close examination to determine whether nonmutual use of the doctrine is fair and appropriate." *Vandenberg v. Superior Court*, 21 Cal.4th 815, 829-30 (1999) (*internal quotations and citations omitted*).

### 6.   Summary

Judge LiCalsi's opinion regarding Sierra Hideaway's status as housing for persons over 55 years does not satisfy the requirements for collateral estoppel in this case. *Blackstock* did not involve identical issues.  Judge LiCalsi's opinion regarding Sierra Hideaway's status as housing for persons over 55 years was not essential to his judgment granting Defendants' summary dispossess action.  Defendants did not lose the issue as a result of the final judgment.

1

### C.  Policy Objectives of Collateral Estoppel

2      Even if the Plaintiff could have established the five elements of collateral estoppel,

3  granting collateral estoppel would frustrate the doctrine's policy objectives.

4          Collateral estoppel is not an inflexible doctrine.  Even if the minimal requirements
          for its application are satisfied, the doctrine should not be applied if
5          considerations of policy or fairness outweigh the doctrine's purposes as applied in
          a particular case.
6
        *Bostick*, 147 Cal.App.4th at 97.
7
        "Although issue preclusion generally refers to the effect of a prior judgment in
8
   foreclosing successive litigation of an issue of fact or law, issue preclusion has never been
9
   applied to issues of law with the same rigor as to issues of fact."  *Af-Cap Inc. v. Chevron*
10
   *Overseas (Congo) Ltd.*, 475 F.3d 1080, 1086 (9th Cir. 2007) (*citations and internal quotation*
11
   *marks omitted*).  "Considering whether to grant preclusive effect to a legal determination is
12
   constrained in a case like this one where "[i]f the rule of issue preclusion is applied . . . [we are]
13
   foreclosed from an opportunity to reconsider the applicable rule, ans thus to perform [our]
14
   function of developing the law."  *Id.*, *quoting* Restatement (Second) of Judgments § 29 cmt. I
15
   (1982).  Application of collateral estoppel must not be applied to legal issues to freeze
16
   development in important legal issues.  *Id.*  Because Judge LiCalsi's opinion is inconsistent with
17
   the holding of the Ninth Circuit Court in *Balvage v. Ryderwood Improvement and Service Ass'n,*
18
   *Inc.*, 642 F.3d 765 (9th Cir. 2011), applying collateral estoppel would disregard legal authority not
19
   available when the Superior Court rendered its decision in Blackstock's case.  Summary
20
   adjudication of claim 1 of Plaintiff's motion is denied.
21
   ### IV.    Sierra Hide-Away Qualified as Housing for Older Persons
22
        Although the majority of the undisputed facts recite instances in which Defendants
23
   asserted that residency at Sierra Hide-Away was limited to persons who were 55 years or older
24
   and that no children were permitted, Plaintiff next contends that Sierra Hide-Away cannot satisfy
25
   the requirements of 42 U.S.C. § 3607 (b)(2)(C), because (1) Manager Leslie Seibert permitted
26
   occupancy by some individuals who were less than 55 years old;  (2) Sierra Hide-Away did not
27
   publish or adhere to policies demonstrating an intent to operate as limited to persons 55 years or
28

older; and (3) Sierra Hide-Away did not comply with the provisions of 24 C.F.R. § 100.307(b) requiring verification of occupancy.  Defendants disagree, pointing out that recent case law provided a procedure by which property owners who did not comply with 24 C.F.R. § 100.307(b) within  18 months of its enactment could qualify as housing for older persons at a later date.

As amended in 1988, the Fair Housing Act broadly prohibits discrimination against families with children in the sale and rental of housing.  42 U.S.C. § 3604 *et seq*.  Among the exceptions to the prohibition are three forms of housing for older persons.  42 U.S.C. § 3607. Defendants contend that Sierra Hide-Away satisfies the definition of housing intended for occupancy by persons 55 years of age and older, as set forth in 42 U.S.C. § 3607 (b)(2)(C), which provides:

> (2) As used in this section, "housing for older persons means housing–

> > (C) intended and operated for occupancy by persons 55 years of age or older, and–

> > > (I)  at least 80 percent of the occupied units are occupied by at least one person who is 55 years of age or older;

> > > (ii)  the housing facility or community publishes and adheres to policies and procedures that demonstrate the intent required under this subparagraph; and

> > > (iii)  the housing facility or community complies with rules issued by the Secretary for verification of occupancy, which shall–

> > > > (I)  provide for verification by reliable surveys and affidavits; and

> > > > (II) include examples of the types of policies and procedures relevant to a determination of compliance with the requirement of clause (ii). Such surveys and affidavits shall be admissible in administrative and judicial proceedings for the purposes of such verification.

Plaintiff first contends that Sierra Hideaway cannot qualify under the statute as housing for older as housing intended for occupancy by persons 55 years or older because Leslie Seibert admitted that he knowingly rented lots to individuals younger than 55 years old.  That Seibert rented to some younger individuals is not dispositive because the statute requires only that 80 per

1  cent of the occupied units be occupied by individuals who were 55 years or older.  Defendants

2  contend that, at all times, at least 80 percent of the mobile homes were occupied by at least one

3  person who was 55 or older.

4      Seibert testified that he permitted individuals under 55 to rent lots in several specific

5  instances: the tenant was disabled; the tenant was soon to reach 55 years of age; or, as was the

6  case with Rebecca Blackstock's rental of Lot 6, the rental was a reasonable accommodation to

7  the care giver of a qualified resident.

8      Nonetheless, Plaintiff contends that because Defendants never established a system of

9  verification, they cannot meet their burden of proving that at least 80 percent of the lots were

10  occupied by at least one tenant of the requisite age.  She further contends that, because

11  Defendants did not establish a system of verification within 18 months of the adoption of 24

12  C.F.R. § 100.307(b), it can never qualify as housing for older persons.  Plaintiff is wrong.

13      24 C.F.R. § 100.307 (a) acknowledged the requirement that in order for a housing facility

14  or community to qualify as housing for persons 55 years of age or older, it must be able to

15  produce, in response to a complaint of discrimination, verification of compliance with 24 C.F.R.

16  § 100.305 through reliable surveys and affidavits.  Within 180 days of the regulation's effective

17  date (April 2, 1999), the facility or community was required to develop "procedures for routinely

18  determining the occupancy of each unit, including the identification of whether at least one

19  occupant of each unit is 55 years of age or older." 24 C.F.R. § 100.307(b).  The procedure was to

20  include provisions for updates of the information provided by the units' occupants at least once

21  every two years. 24 C.F.R. § 100.307(c).  A resident could document his or her age by

22  presenting a reliable document such as a birth certificate, driver's license, passport, immigration

23  card, military identification, or similar official governmental document, or by a certification by a

24  member of the household over the age of 18 years that at least one person in the unit is 55 years

25  or older. 24 C.F.R. § 100.307 (d). Defendants conceded that they did not promulgate a procedure

26  for documenting each lot's occupancy within the regulatory period.

27      Defendants' failure to establish a verification procedure did not doom their effort to

28  qualify as housing for older persons. *Balvage*, 642 F.3d at 768-69.  The Court held that "a

14

residential community that has continuously operated as a retirement community for persons age

55 and older can qualify for the housing for older persons exemption from the Fair Housing Act's

prohibition on familial status discrimination by establishing that it *currently* satisfies the

exemptions three statutory and regulatory criteria at the time of the alleged violation, even if the

community enforced age restrictions when it first achieved compliance with the exemption's age

verification requirement." *Id.*

        Defendants contend that Sierra Hide-Away met the requirement for exemption at the time

of the alleged discrimination against Plaintiff's child at least since it began conducting a survey

to document residents' ages beginning in 2009.  Plaintiff disagrees based on documentation

provided to her through discovery.  Because the age documentation evidence presented is

disorganized and lacks summary information, this Court cannot decide as a matter of law the

point at which Sierra Hide-Away satisfied 24 C.F.R. § 100.307(b).  Because a question of fact

exists with regard to this issue, summary adjudication of issue 2 of Plaintiff's motion for

summary judgment is denied, subject either to trial or a subsequent motion in which the evidence

is more clearly organized and explained in the context of Sierra Hide-Away's available units.

**V.    Discrimination Against Children's Occupancy**

        Although the Fair Housing Act broadly prohibits discrimination against families with

children in the sale and rental of housing (42 U.S.C. § 3604 *et seq.*), three forms of housing for

older persons are exempt from the prohibition of discrimination against families.  42 U.S.C. §

3607.  Because the parties dispute the facts necessary to determine whether Sierra Hide-Away

qualifies as housing for older persons and the Court has declined to decide that issue as a matter

of law, the Court cannot decide as a matter of law whether Sierra Hide-Away discriminated

against Plaintiff's daughter by denying her residency in the park.  Accordingly, the Court denies

summary adjudication of claims 3, 4, 5, 6, 7, and 10 of Plaintiff's summary judgment motion.

**VI.   Unlawful Retaliation for Plaintiff's Rebuff of Defendant Leslie Seibert's Sexual
        Advances**

        Plaintiff asserts that Defendants discriminated against her because she rebuffed Leslie

Seibert's sexual advances in 2005.  Because the parties dispute the facts that Plaintiff contends

1  constituted sexual advances, summary judgment on claim 8 of her motion for summary judgment

2  would be inappropriate in any case.  Even assuming that Plaintiff's allegations of sexual

3  advances are accurate, no evidence in the record supports an inference that her rebuffing these

4  advance in early summer 2005 resulted in discrimination against the residency of Plaintiff's

5  daughter over four years later.  To the contrary, all relevant evidence indicates that Defendants'

6  determination that Plaintiff's child could not reside in the park resulted from Defendants' belief

7  that Sierra Hide-Away qualified as housing for older persons under 42 U.S.C. § 3607.

8  To the extent that Plaintiff intended to assert discrimination against Defendants based on

9  her multiple charges of discrimination relating to her sale of her mobile home in the recitation of

10  facts in her memorandum of points and authorities, the Court reminds Plaintiff that the statute of

11  limitations for claims under the Fair Housing Act is two years.  Because Plaintiff filed her

12  complaint on April 5, 2010, any claims of discrimination alleged to have occurred prior to April

13  5, 2008 are barred.

14  Summary adjudication of claim 8 of Plaintiff's motion for summary judgment is denied.

15  **VII.   Trust's Liability for Leslie Seibert's Actions**

16  In claim 9 of her summary judgment motion, Plaintiff contends that the Seibert Family

17  Trust 1995 is vicariously liable for Leslie Seibert's discriminatory actions.  In claim 12, Plaintiff

18  contends that the trust failed to supervise Leslie Seibert.  Defendants assume that Plaintiff's

19  intent was to impose individual liability on Marilyn Seibert.

20  Since a trust has no supervisory (or any other) powers independent of its trustee(s),

21  Plaintiff's allegations make no sense.  Because Plaintiff specifically seeks to impose liability on

22  the trust, this Court declines to assume that she really meant that Marilyn Seibert is vicariously

23  liable or failed to supervise Leslie Seibert.

24  Plaintiff having failed to provide any supporting legal or factual details, summary

25  adjudication of claims 9 and 12 of Plaintiff's motion for summary judgment is denied.

26  **VIII.   California Unfair Business Practices Act**

27  Plaintiff provides no authority for her assertion that violations of the Fair Housing Act are

28  also anticompetetive practices under California's Unfair Business Practices Act.  California

Business & Professions Code § 17200 *et seq.*  Even assuming Plaintiff's assertions are supportable, because this Court has denied summary judgment on Plaintiff's claims of discrimination, summary judgment on claim 11 must also be denied.

**IX.    Treble Damages**

Having denied summary adjudication of Plaintiff's discrimination claims, the Court need not reach Plaintiff's claim for treble damages.

**X.     Summary and Order**

For the reasons set forth in the foregoing discussion, Plaintiff's motion for summary judgment is denied.


IT IS SO ORDERED.

**Dated:    February 22, 2012                      /s/ Sandra M. Snyder**
                                             UNITED STATES MAGISTRATE JUDGE

17